Henry J. Agnew *v.* Albert McWayne.

## SUPREME COURT—IN BANCO.

### APRIL TERM—1881.

*Harris, C. J., Judd and McCully, J.J.*

### HENRY J. AGNEW *vs.* ALBERT McWAYNE.

ON EXCEPTIONS TO THE RULING OF THE JUDGE, SETTING ASIDE THE
VERDICT OF THE JURY.

THE PLAINTIFF, having deposited $500 with defendant as stake-
holder, the amount of a bet with M. on a horse race, demanded
the money to be paid back to him, which defendant refused to do
and held the money when suit was brought;

HELD, that the defendant as stakeholder was a mere depositary with
authority to deliver it over on the proposed contingency, and this
authority being revoked the money remains a deposit to the use
of the depositor, and plaintiff can recover it in an action for
money had and received;

*Also,* that the jury were not authorized to consider the question as to
which horse had won the race; and the verdict being contrary to
the law, and the fact being uncontested that the defendant held
the plaintiff's deposit at the date of demand, the Court set aside
the verdict and ordered judgment for the plaintiff *non obstante
veredicto.*

Opinion of the Court by McCULLY, J.

This was an action in the common form for the recovery of
money had and received, etc. Upon the trial the plaintiff in-
troduced in evidence:

1. A letter dated March 8, 1881, from plaintiff to defend-
ant, stating that he had placed in defendant's hands $500 (in
checks to defendant's order, which were produced and shown
to have been cashed by defendant) prior to September 11,
1880, as stakes in a horse race to be run on that day, demand-
ing the return of this amount.

Henry J. Agnew *v.* Albert McWayne.

2. Defendant's reply March 8th, viz: "I would say the judges (of the races) instructed me to hold the said stake until they rendered their decision in writing. Awaiting that decision, I am forced to decline your request and refuse to deliver you the money."

3. Letter from plaintiff's attorney to defendant, of same date, making a demand with intimation of legal proceedings.

4. Reply March 9th of defendant's attorney to plaintiff's attorney, "that he, defendant, declines and will decline to deliver the said checks to any person until the judges (of races), to whom the whole matter has been referred, shall have decided to whom they belong."

Plaintiff being on the stand to prove copy of his letter, was asked in cross-examination if the judges had not made a decision, answered that they had made a verbal decision at the time of the race and in favor of the horse which ran against his own.

The Court instructed the jury that the plaintiff might recover money which he had deposited, it being still in the hands of the stakeholder, and the defendant's and his attorney's letters, with nothing to contradict them, showed that the stakeholder had the money in his hands on the 8th of March, when it was demanded of him, yet the jury retired and returned with a verdict for defendant. Whereupon the plaintiff moved the Court to set aside the verdict and grant a new trial, and the Court considering that the jury had been in effect instructed to find for the plaintiff, and that if the instructions were correct there was nothing for the jury to deliberate upon, ordered the verdict set aside and judgment to be entered for plaintiff *non obstante veredicto.* Whereupon the defendant brings the matter up by bill of exceptions as follows:

"Be it remembered that on the trial of the above case the defendant asked for the following instructions:

"1. The defendant moves the Court to instruct the jury

that betting on racing or trotting on the Kapiolani Park is not prohibited by law and does not come under the general law upon gaming.

"2.   That trotting horses on said race course is not a game as contemplated by Chapter XXXIX of the Penal Code.

"3.   That defendant had a legal right to hold the stakes and to pay them over to the winner on the decision of the judges communicated to him.

"4.   That the decision of the judges of said trotting races being rendered in favor of McClellan, plaintiff is barred from recovering against the defendant.

"Which said instructions the Court declined to give, to which decision of the Court the defendant excepted, and in lieu of said instructions the Court instructed the jury as follows:

"That the money deposited in the hands of the stakeholder and held six months after the event, might be recovered in an action for money had and received, and therefore it was unnecessary to give instructions one and two.   Declined to give instruction three.   Instruction four is a matter of testimony and contrary to it, *vide* McWayne's letter of 6th March, 1881.

"To which instructions of the Court the defendant excepted."

We understand that a wager is valid at common law unless affected with some special cause of invalidity, such as being of a nature to wound or prejudice the feelings or interests of individuals, or as being contrary to public policy, but that as the moral sense of the present day regards all gaming or wagering contracts as inconsistent with the interest of the community and *contra bonos mores*, the exceptions tend to become the rule, and it is accordingly held in many of the Courts of the United States that all contracts of wager are invalid, and in others, where a recovery is theoretically allowed, it is seldom permitted in practice, and in some States all wagering or gaming contracts have been prohibited.   See Smith's Leading Cases, Vol. 2, pp. 281-2.

Our own statute of gaming provides, Section 1, whoever by playing at cards or any other game wins or loses any sum of money or thing of value is guilty of gaming.

Sec. 5. Whoever shall by playing at cards or any other game, or by betting on the sides or hands of such as do play, lose any sum of money or thing of value, and shall pay or deliver the same or any part thereof, may sue for and recover the money or value of the thing so lost and paid or delivered, from the winner thereof.

Compare with these the English statutes, 16 Car. 2, c. 7, s. 3, which enacts that if any one shall play at any pastime or game, by gaming or betting upon those who game, and shall lose more than the sum of £100 on credit, he shall not be bound to pay, and any contract to do so shall be void; and the 9th Anne C. 14 (the principal enactment), provides that all securities for money or any other valuable thing won by gaming or playing at cards, dice tables, bowls, or other game whatever, or by betting on those who game, etc., shall be void.

But a horse race is a game within the meaning of these Acts of Parliament (see Smith on contracts, and authorities cited, page 250), and accordingly subsequent Acts were passed in 13 Geo. and 3 Victoria to legalize horse racing for stakes, with some limitations, thereby excepting them from the operation of the older statutes.

The language of our statute conforms almost literally with the statute of 9th Anne above cited. But it seems to us in the case at bar it is not necessary to consider if a bet paid on the event of a race could be recovered from the winner by force of the statute. The plaintiff's stake had not been paid over; but was in the hands of the stakeholder, the defendant. The contract between the plaintiff and McClellan was still executory, not executed. "The stakeholder is a mere depositary of both parties for the money deposited by them respectively with a naked authority to deliver it over on the proposed contingency. If the authority is actually revoked before the

money is paid over, it remains a naked deposit to the·use of the· depositor," is the language of Chief Justice Shaw in Ball *vs.* Gilbert g:, trustee, 12 Met., 403, citing 5 T. R., 405, and 7 T. R:, 535. The stakeholder· is therefore the agent for a certain;purpose. If he has executed his purpose according to· instructions his principal cannot charge him, but before the· performance in this case the· principal withdraws and countermands his instruction. He has received the money without consideration.. He is not a party to the contract, He cannot be· liable to pay to McClellan for a stake·which is not in his· hand, and it is, equally clear that he cannot hold it for himself. If McClellan has any rights it must be on his contract with the· plaintiff. Such being. the attitude of a stakeholder, if he refuses to return stakes to· either party recalling his deposit, the demand may be· enforced in an action for money had and received.

We therefore· hold that the Court below properly·instructed the jury to return a verdict for the· plaintiff: The· jury disre-- garding the instruction must have· deemed it in their province to consider which of the betting parties had won the race, and taking the plaintiff's testimony that the· race· judges had given· some decision at the conclusion of the race·in: favor of his op- ponent, rendered a verdict for the defendant. But no question which horse· had won the·race was allowed by the Court to go· to the· jury, in order·to determine the payment of the money bet. If this were·permitted in any degree the consequences· might become most unseemly. The Court and jury must come to·consider the rules of the turf and the usages of betting· men. In: a contested race it must consider if the start was lawful, the· weights,. what had been agreed on, the running· fair, the·time announced truly, with every other circumstance· of fair or tricky dealing; which may come out of a public horse race: We·may use·the language of Mr. Justice Parker in Amory *vs.* Gilman,.2 Mass., 5, which was a wager insurance· policy case..

"It would seem a disgraceful occupation for the courts of any country to sit in judgment between two gamblers in order to decide which was the best calculator of chances, or which had the most cunning of the two. There could be but one step of degradation below this, which is that the judges should be the stakeholders of the parties."

As therefore we sustain the instruction given by the Court, and as the verdict was expressly contrary to the law so given and to the uncontested facts, we are of opinion that the Court was right in setting aside the verdict, and as there was no question upon the fact that the defendant held the plaintiff's deposit at the date of demand, we are of opinion that it was proper to order judgment for the plaintiff, *non obstante veredicto*. *Cui bono* another trial? There is nothing for the jury to consider and pass upon under the facts and the law as we find it. This was the doctrine of the Court in Kaia *vs.* Kamaile, October Term, 1880.

Exceptions overruled.

E. Preston for plaintiff.

W. C. Jones for defendant.

Honolulu, April 30, 1881.