## THE KING *vs.* YEONG TING.

### BEFORE JUDD, C.J. IN INTERMEDIARY COURT.

### JULY, 1885.

"Pak Kap Pio," a Chinese lottery, is a "game."

### DECISION OF JUDD, C.J.

This case comes from the Police Court of Honolulu by appeal.

The defendant, a Chinaman, was engaged, as manager thereof, in a proceeding called Pak Kap Pio, as translated, the "Dove Lottery," which may be described as follows: A cloth is hung up on which are tacked eighty small squares of paper, on each of which is written a Chinese character. Tickets are sold, having corresponding characters upon them. The holder of the ticket marks off on his ticket ten of such characters as he thinks may win. The manager, when all the holders of the tickets have completed their marking, takes down the papers from the cloth and rolls each one up in a ball so that the character on it cannot be read, mixes them up in a pan, then puts them promiscuously in four bowls, twenty in a bowl. The holders of tickets select and withdraw one bowl and contents. Sixty characters then remain. The manager then selects one bowl, and its contents, twenty characters, are the winning numbers. These are tacked on to the cloth and again hung up, and holders of tickets having characters on them which they have marked off, corresponding to the characters exhibited on the cloth, are winners, according to the number of characters so marked off. To illustrate: In the cheapest class of these lotteries, the one cent game, if a man pays ten cents he is entitled to mark ten numbers.

| | | | | | |
|---|---|---|---|---|---|
| If he marks 6 of the winning numbers he wins | | | | ...................$ | 1 50 |
| If he marks 7 " | " | " | " | ........................... | 15 00 |
| If he marks 8 " | " | " | " | ........................... | 75 00 |
| If he marks 9 " | " | " | " | ........................... | 150 00 |
| If he marks all or 10 " | " | " | " | ........................... | 300 00 |

A record is kept showing the number of tickets sold, to whom, and the amounts received.

It is urged by the defendant's counsel that this is a lottery, a device by which by a simple chance a man may win something, and that it is not within the "Gaming Act" of this country, although its evils may be within the evils sought to be prevented by the Act. If one takes a chance in a raffle or a lottery he plays no "game."

## BY THE COURT.

The statute of this country on the subject of gaming is in these words: "Whoever by playing at cards or any other game wins or loses any sum of money or thing of value is guilty of gaming." It is remarkable that though this section of the law has been on the Statute Book, unamended, for over thirty-five years, it has never received judicial construction.

Bouvier defines gaming to be "a contract between two or more persons by which they agree to play by certain rules at cards, dice, or other contrivance, and that one shall be loser and the other the winner. There are games which depend altogether upon skill, others upon chance, and some others are of a mixed nature. Billiards are an example of the first, lottery of the second, and backgammon of the last."

Bishop in his Statutory Crimes, Sec. 857, says of games or gaming: "It is perilous to undertake to give an original definition of a word so elastic in its use, and of such uncertain meaning; yet the author will venture the following, as indicating the sense in which it is more commonly employed. A contest of chance, or of skill disconnected from the idea of useful production, wherein the party in whose favor the result appears is termed the winner, and the other party is termed the loser."

I have no difficulty in finding that the matter under discussion is a "game of chance." Our statute is silent as to whether the game, to be within the law, shall be one of skill, of chance, or of both skill and chance. Therefore it includes games of all these descriptions. But the mere playing of such games is not forbidden. It is when by playing such games one shall lose or

37

win money thereby that the statute calls it "gaming," and a punishable offense.

The winning and losing of money in the game described in the testimony is clearly established. The defendant, as I understand it, was the manager of the lottery, and the chances of his winning money were exceedingly great. It is proved that he did win money by this game. Did he, however, play at the game? He conducted the lottery and had an interest in its almost certain gains. But I do not think it is necessary to hold that he must be shown to have personally manipulated the apparatus or devices used, in order to hold him a player of this game. He must be shown to have participated in it so far as to have risked money or a thing of value upon the contingency of success or loss. Our statute does not particularize the games which are unlawful, as in some countries. I must believe that the Legislature did not enumerate the games then in vogue, in order that the law might be comprehensive enough to include every description of game, which, if played for money, the law condemns. Human ingenuity is constantly inventing new games and new names for old games. But under our sweeping law it is not necessary that there should be new legislation to meet each new invention. The test is whether the player wins or loses money thereat.

In the case of *Commonwealth vs. Wright*, 137 Mass., 250, the Court discusses the question whether the game popularly known as the policy or envelope game, is a lottery. The Court find it to be a lottery, and call it a "game" throughout the discussion, and that the "playing" of it was by a person choosing a number and playing for it, and the rest of the game was executed or played by the conductor of the lottery.

Our statute is, as I have said, peculiar, and allows great latitude in construction.

Gaming is not an offence recognized by the common law of England.

Having found that the matter in which the defendant was engaged, to wit, a Chinese Dove Lottery, is a game in which by

playing at it he won money, I find him guilty, and sentence him to pay a fine of $100 and costs, and to be imprisoned at hard labor for ten days.

*Attorney-General Neumann,* for the Crown.
*A. S. Hartwell & W. A. Whiting,* for defendant.
Honolulu, July 11th, 1885.