## TERRITORY OF HAWAII *v.* GEORGE TSUTSUI.

## NO. 2805.

ARGUED FEBRUARY 29, 1952.                    DECIDED MARCH 4, 1952.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

Defendant, plaintiff in error, was convicted by a jury in the circuit court of the first judicial circuit for participating in and being present at a gambling game in violation of section 11343, Revised Laws of Hawaii 1945; he was sentenced by the court to one year in prison and placed on probation for a period of five years, execution of sentence to be suspended except as to thirty days thereof upon certain conditions, one of which was repayment of moneys obtained from the complaining witness.

Counsel for plaintiff in error raised in this court for the first time the constitutionality of section 11343, Revised Laws of Hawaii 1945, contending it violated the Constitution of the United States which guarantees freedom of assembly and association, the Fourth Amendment as it infringes the right of people to be secure in their persons and in their houses against unreasonable searches and seizures, and also the Fifth Amendment that no person shall be deprived of life, liberty or property without due process of law.

Inasmuch as these questions were not raised below (and were not argued in this court) the court deems it unnecessary to pass upon the constitutionality of the law. (*Territory* v. *Kelly,* 38 Haw. 433; *Wong Tai* v. *United States,* 273 U. S. 77.)

Two additional contentions were made: first, that to constitute gambling, the result of the event or game must be dependent more upon chance or lot than skill and that, second, to constitute gambling as by playing at cards, money or something of value must be won or lost as a result of the game, and that the evidence herein does not prove that money or anything of value was lost or won.

As to the first question counsel is obviously confusing section 11340, dealing with lottery, with section 11343, which prohibits gambling on card games, etc. Section 11343 prohibits betting on games in which money or any-

thing of value is lost or won, and makes no distinction whether it is a game of skill or chance. *Territory* v. *Apoliona,* 20 Haw. 109, at 111, points out that to come within such statute a gambling need not be a banking or percentage game and, we may add, need not be dependent upon chance rather than skill. Betting on a game is prohibited and penalized. Counsel's argument that this was a crooked game in which nothing was left to chance cannot be a defense to a charge of gambling; in fact, it is rather an aggravation to point out that nothing was left to chance but one of the participants was to be fleeced. This is an aggravation rather than a defense to the gambling charge.

Counsel's other point, that the evidence does not show that anything was won or lost, cannot be sustained. The evidence discloses that the complaining witness met the defendant and subsequently one Quack and one Kiyabu, that they went to a hotel room to await some women who apparently did not show up, and while waiting they engaged in a game of blackjack which was played for a time at one dollar a game, with the stakes gradually increased to one hundred dollars per game. Later Quack requested that they play high cards instead of blackjack; that Quack left the room to go to the toilet and defendant purported to show the complaining witness and Kiyabu, the other participant in the game, a system whereby the defendant could call the high card with the idea of fleecing Quack. The game continued until Quack offered to bet $15,000 on a single draw; the parties drew and Quack was beaten by the three apparent conspirators. Quack refused to pay the $15,000 until the defendant could produce a matching sum; it was agreed to wait until twelve o'clock the next day to allow the defendant to match the $15,000. As defendant did not have that much money, the three agreed that Kiyabu was to raise $1,000, Suzuki, the complaining witness, $2,000, and the defendant the balance. The complain-

ing witness, Suzuki, then withdrew $2,000 from the bank. The next day they met Quack but the balance of the $15,000 had not been raised by the defendant, Quack called the bet off, but offered to bet $8,000 upon high card, the entire amount that Kiyabu and Suzuki and the defendant had raised. The complaining witness at first refused to join in the game but upon defendant's offer to borrow the $2,000 belonging to Suzuki and place the bet, the complaining witness drew a card to increase their chances of beating Quack. Quack drew the high card, took the entire $8,000, including the $2,000 borrowed from the complaining witness.

Counsel claims that nothing was won or lost as Quack and the other two persons were in conspiracy to fleece the complaining witness. There is no testimony along this line but this follows the usual fleecing game pattern. There was no evidence that Quack divided the proceeds with his comrades; the defendant did not take the stand so nothing is known of the ultimate disposition of the $8,000 that was lost on the high card, $2,000 of which was borrowed from the complaining witness. Whether the complaining witness actually joined in the game as a party by drawing a card or merely loaned his money to one of the participants, the money was lost and won upon a bet on high card, a bet upon a game though possibly a crooked game in which the defendant participated.

There is sufficient evidence to sustain the verdict of the jury. The judgment is affirmed.

*G. Nakamura* (*Y. Fukushima* on opening brief; *Fukushima & Nakamura* on reply) for plaintiff in error.

*T. Kitaoka*, Assistant Public Prosecutor (*A. R. Hawkins*, Public Prosecutor with him on the brief), for defendant in error.