## TERRITORY OF HAWAII *v.* DAVID NAUMU.

### No. 4067.

Submitted November 3, 1958.      Decided December 15, 1958.

Rice, C. J., Stainback and Marumoto, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Appellant, David Naumu, was charged in the district court of Honolulu with conducting "a gambling game in which machines were used or in which something of value was won or lost to wit: free games on the pinball machines contrary to Section 11343 RLH/45." He interposed a demurrer challenging the applicability of the facts alleged to the offense charged and the constitutionality of the statute as enacted and applied. The district magistrate overruled the demurrer. Thereupon, the parties submitted the case on an agreed statement of facts in which appellant admitted that at the time and place alleged in the charge he operated a pinball machine game in which free games were won or lost. The magistrate found appellant guilty and sentenced him to pay a fine of $25, suspended.

The case is before us on appeal from such judgment on points of law.

Appellant alleges that the magistrate erred in ruling:

(1) that the charge stated facts sufficient to constitute a violation of R.L.H. 1945, § 11343, now R.L.H. 1955, § 288-4;

(2) that R.L.H. 1955, § 288-4, is not invalid, defective, null and void, in violation of appellant's rights under the Fifth and Fourteenth Amendments to the Constitution of the United States in that the statute is vague, indefinite and uncertain; and

(3) that R.L.H. 1955, § 288-4, is not invalid, defective, null and void, in violation of appellant's property rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, as applied in the case, to the operation of a pinball

machine game wherein free plays or free re-plays may be awarded to a successful player.

The statute in question provides for the punishment of every person found guilty of conducting any game in which money or "anything of value" is lost or won. In *Territory* v. *Uyehara,* 42 Haw. 184, we held that free games won on a pinball machine came within the meaning of "anything of value" as used in the statute.

We see no merit in the first error alleged by appellant. The question raised therein is identical with the question considered and decided in the *Uyehara* case.

With reference to the second alleged error, appellant's contention is that the phrase "anything of value" in R.L.H. 1955, § 288-4, is too vague, indefinite and uncertain to withstand the strict construction due a penal statute.

A statute may be so vague as to violate the due process clause of the Fifth and Fourteenth Amendments. In *Connally* v. *General Construction Co.,* 269 U. S. 385, the Supreme Court of the United States affirmed an interlocutory decree of the district court enjoining the enforcement of a statute containing the phrase "current rate of per diem wages in the locality where the work is performed." In doing so, the court made the oft-quoted statement that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

However, actually the court has required less definiteness than is indicated in the foregoing statement in the *Connally* case. This fact is recognized in the following further statement in that very case:

"The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others, declared invalid. The precise point of differentiation in some instances is not easy of statement. But it will be enough for present purposes to say generally that the decisions of the court upholding statutes as sufficiently certain, rested upon the

conclusion that they employed words or phrases having a tech-nical or other special meaning, well enough known to enable those within their reach to correctly apply them, *Hygrade Pro-vision Co.* v. *Sherman,* 266 U. S. 497, 502; *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348, or a well-settled common law mean-ing, notwithstanding an element of degree in the definition as to which estimates might differ, *Nash* v. *United States,* 229 U. S. 373, 376; *International Harvester Co.* v. *Kentucky,* [234 U. S. 216, 223], or, as broadly stated by Mr. Chief Justice White in *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 92, 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a stan-dard of some sort was afforded.' "

In *United States* v. *Petrillo,* 332 U. S. 1, the court upheld the validity of a section of the Communications Act of 1934, 48 Stat. 1064, 1102, as amended, which provided for the punishment of any person attempting to coerce a licensee to employ "any person or persons in excess of the number of employees needed by such licensee to perform actual services." The court stated:

"* * * We think that the language Congress used provides an adequate warning as to what conduct falls under its ban, and marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of Congress. That there may be marginal cases in which it is difficult to deter-mine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. *Robinson* v. *United States,* 324 U. S. 282, 285-286. It would strain the requirement for certainty in criminal law standards too near the breaking point to say that it was impossible judicially to determine whether a person knew when he was wilfully attempting to compel another to hire unneeded employees. See *Screws* v. *United States,* 325 U. S. 91; *United States* v. *Ragen,* 314 U. S. 513, 522, 524, 525. The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Con-stitution does not require impossible standards. The language

here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more."

The language that was attacked in the *Connally* case presented, in the opinion of the court, a double uncertainty fatal in a criminal statute. The words "current rate of per diem wages" did not denote a specific sum, but minimum, maximum and intermediate amounts, indeterminately, varying from time to time and dependent upon such considerations as kinds of work done and efficiency of workmen; and the word "locality" was an elastic term which might be equally satisfied by areas measured by rods or by miles, depending upon circumstances. The vice in the language was that it made the application of the law depend "not upon a word of fixed meaning in itself, or one made definite by statutory or judicial definition, or by the context or other legitimate aid to its construction," but upon the personal equation of those who applied the law. In other words, the language did not provide a rule of sufficient objectivity to guard against an arbitrary result.

In our opinion, the phrase "anything of value," as used in R.L.H. 1955, § 288-4, is not subject to such vice and does not render the statute constitutionally vulnerable for uncertainty. It can hardly be said that the phrase does not give adequate warning as to what falls under its ban or that it does not provide a sufficient standard for the objective and impartial application of the law.

Such phrase is commonly found in state statutes designed to curb the evils of gambling. In a gambling statute, the use of such all-embracing and catch-all phrase is necessary to meet the ingenuity of those who are intent upon circumventing the law. A new method of circumvention necessarily raises a question as to the applicability of the law to the invention. The fact that such question is raised does not make the law uncertain in a constitutional sense. Those who devise means of circumvention take the risk of treading on the brink of the law. As stated by Mr. Justice Holmes in *United States* v. *Wurzbach,* 280 U. S. 396, 399: "The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it

is familiar to the criminal law to make him take the risk."

The third error alleged by appellant hardly requires our consideration, for the appellant himself has not given any serious consideration to it. His brief on this point covers less than one page. He has not cited any authority, although apparently he relies on the principle first set forth in *Yick Wo* v. *Hopkins,* 118 U. S. 356, 373, as follows: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand; so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." We do not see any such discriminatory application of the law in this case.

Affirmed.

*Hyman M. Greenstein* for defendant-appellant.

*Frederick J. Titcomb,* Assistant Public Prosecutor, City and County of Honolulu, for plaintiff-appellee.

