STATE OF HAWAII *v.* ANNIE LEE PREVO.

No. 4190.

MARCH 14, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS, JJ.,
AND CIRCUIT JUDGE CROCKETT
ASSIGNED BY REASON OF VACANCY.

666

OPINION OF THE COURT BY WIRTZ, J.

The defendant was charged, under an amended information in the Circuit Court of the First Circuit, with the offense of being present at a game prohibited by the provisions of Section 288-4, Revised Laws of Hawaii 1955. Defendant demurred, challenging the constitutionality of the statute, upon the ground that the portion of the statute under which defendant was charged was fatally vague and indefinite. That demurrer was overruled and thereupon the parties submitted the case on an agreed statement of facts, in which defendant admitted being present while "Fascination" was being played. The trial court found "from the facts that a prohibited game, to wit: Fascination, was being played, contrary to Section 288-4, Revised Laws of Hawaii 1955, and in which the defendant was present while that game was going on" and, accordingly, found the defendant guilty of the misdemeanor and sentenced her to pay a fine of $25.00. The case is now before this court on Writ of Error to the judgment and sentence.

The facts in this case were stipulated to and are not in dispute. In brief, "Fascination" is played on a table at one end of which there is a square arrangement of 25 holes consisting of five vertical and five horizontal rows. The player is seated behind the opposite end of the table and is furnished a hard rubber ball, about one-eighth of an inch smaller than the holes. This ball is rolled up a gradient plane toward the rows of holes. Between the

player and the holes is a barrier extending across the width of the rows of holes which the ball must surmount before reaching the holes. As the ball enters a hole an electrical device lights up the location on a reproduction of the playing grid set up on a vertical backboard of the device. If the ball does not enter one of the holes, it rolls off to the side and enters an opening. In either case, the ball is returned to the player for the next roll.

In the establishment under consideration, there are 38 individual playing devices and each player pays a playing fee of ten cents per game. As many as 38, but not less than two players compete against each other and the object is to be the first player to light a vertical, horizontal or diagonal five-hole row, after the fashion of "bingo." When one of the players makes such a row, the game between all automatically ends. The winner is awarded a coupon or coupons, the number depending upon the particular arrangement of the row of five holes scored. These coupons may either be used for the playing of additional games, or to redeem merchandise displayed on the premises. Defendant was present upon the premises tending the merchandise counter.

Section 288-4, Revised Laws of Hawaii 1955, reads as follows:

"§ 288-4. Playing prohibited games. Every person who deals, plays or carries on, opens or causes to be opened, or who conducts either as owner or employee, whether for hire or not, any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game played with cards, dice or any device for money, checks, credit or anything representative of value or any other game in which money or anything of value is lost or won, and every person who plays or bets at or against any such prohibited game or games and every person present where such game or games are being

played or carried on, is guilty of a misdemeanor."
The paramount question here involved is whether "Fascination" is a game within the proscription of the statute.

Defendant contends that "any other game" as used in the statute refers to games of chance and that this is the reasonable construction of the phrase since any other construction results in an absurdity not intended by the legislature, namely, the prohibition of all games, including those of skill, wherein something of value is won or lost. She urges that the rule of *ejusdem generis* must be applied, and, since the common denominator of all the enumerated games in the statute is the element of chance, only games of chance and not games in which skill predominates over chance are prohibited. The court below held, as the State contends, that it is immaterial whether skill predominates over chance and, further, that playing "Fascination" involves the winning or losing of something of value in violation of the statute.

Under this appeal defendant lists seven assignments of error.

These specifications of error pose three principal questions which will be stated as they are discussed. The first of these questions thus raised, is: Was it the intent of the legislature to prohibit games in which money or anything of value was won or lost, irrespective of whether skill or chance predominated on the part of the participants?

The contention is made that the phrase "any other game" as used in the statute is ambiguous in that it could mean either "all games," or, "any other such prohibited games," that is, games of the same type or class enumerated in the statute, or "any other gambling games."

In construing a statute the paramount guide is the intent of the legislature. While the established rules of construction, including that of *ejusdem generis,* are aids in

ascertaining and giving effect to the legislative intent, these rules cannot be used in contravention of the purpose of the legislature by confining the operation of the statute within narrower limits than intended. They are neither final nor conclusive but must yield to the legislative will. 50 Am. Jur., *Statutes,* § 224, p. 203. Even the rule that penal statutes are to be strictly construed does not permit a court to ignore the legislative intent, nor does it require the rejection of that sense of the words used which best harmonizes with the design of the statute or the end in view. 50 Am. Jur., *Statutes,* § 415, p. 439. And the mere fact that the language of the penal statute is open to several constructions, one of which would sustain a conviction and the others an acquittal does not require that the interpretation be made in favor of freedom. The interpretation sustaining the conviction will be adopted if the court is satisfied that such was the sufficiently expressed intention of the legislature. *Territory* v. *Palai,* 23 Haw. 133; *cf.* R.L.H. 1955, § 1-18.

Perhaps no section of our statutes has been interpreted more frequently by the courts than the one now under scrutiny. Although the statute is penal in nature, it has been given a comprehensive interpretation, mainly because of its legislative history.

The history of the pertinent portion of our gambling statute, Section 288-4, Revised Laws of Hawaii 1955, goes back to 1850, where it had its origin in Section 1 of Chapter XL of the *Penal Code of 1850,* which read as follows: "Whoever by playing at cards, or any other game, wins or loses any sum of money or thing of value is guilty of gaming."

Chapter XL, *Penal Code of 1850,* provided criminal penalties and civil remedies, the latter practically remaining unchanged in our present law. Section 1 of Chapter XL, *Penal Code of 1850* was amended in minor respects by

later acts in 1870 and 1890. Except for the sections relating to civil remedies all of the laws relating to gaming were repealed and re-enacted in their present form by Act 21 of the *Laws of the Provisional Government, 1893-4*. This repeal and re-enactment of the gaming laws grew out of the revolution of 1893 wherein the monarchy of Queen Liliuokalani was overthrown. The re-enactment by Act 21 was a reaction to the excesses of the legislature and monarchy in its enactment of the opium and lottery bills and the attempt by Queen Liliuokalani to abrogate the then existing constitution so as to promulgate her own constitution. This re-enactment of the gaming laws in its present form clearly shows that the framers intended to prohibit all forms of gambling then known and which would thereafter be invented or devised. While the original act prohibited one specified type of game, to wit, the playing of cards and then prohibited "any other game" wherein any sum of money or thing of value was won or lost, the new act (now Section 288-4, Revised Laws of Hawaii 1955), was more detailed, but, nonetheless, was comprehensive in its scope.

The prohibitions of the statute were directed not only at those persons who conduct the game but also at the players and the spectators. It clearly appears that the act was designed to, at least, prohibit and repress professional gambling so as to insure that the commercial gaming houses should have no place in Hawaii.

The statute enumerated the types of games which were prohibited, to wit: "faro, monte, roulette, tan, fan tan, or any banking or percentage game" and specified the kind of implements by, and objects for which such games were played, such as "cards, dice or any device for money, checks, credit, or anything representative of value." These gambling games were apparently in existence and known to the legislators when the new gaming act was framed.

In addition to the aforementioned enumerated games there was also included in the statute a general clause designed to be applicable to other types of gambling games which might be devised or introduced in the future. This clause prohibited "any other game in which money or anything of value is lost or won."

This particular clause is the only phrase that has been retained from the previous law relating to gambling, to wit: Section 1, Chapter XL, *Penal Code of 1850*. It has been construed by this court both under the earlier laws as it appeared in the *Penal Code of 1850,* as well as under the later law, Act 21, *Laws of the Provisional Government, 1893-4.* For instance, the words "any other game" have been held to include a horse race (dictum), *Agnew* v. *McWayne,* 4 Haw. 422; a lottery, *The King* v. *Ah Lee and Ah Fu,* 5 Haw. 545; Pak Kap Pio, a Chinese lottery, *The King* v. *Yeong Ting,* 6 Haw. 576; "7-11," commonly known as "craps," *Territory* v. *Apoliona,* 20 Haw. 109; black jack or high card, *Territory* v. *Tsutsui,* 39 Haw. 287; by implication, paikau, *Territory* v. *Wong & Hong,* 40 Haw. 423; pinball machines, *Territory* v. *Uyehara,* 42 Haw. 184. Such broad construction is warranted in view of the clear legislative purpose of the statute to outlaw gambling in all its forms.

Defendant contends that the rule of *ejusdem generis* gives overwhelming support to the construction that the phrase "any other game" should be interpreted to read "any other game of the class above enumerated" in the statute. In *Territory* v. *Uyehara, supra,* where the legality of pinball machines was in question, the court decided that such machines were within the prohibitions of the statute, saying at page 187: "The language of the gambling statute includes within its prohibition every game in which money or anything of value is lost or won. The game need not be *ejusdem generis* with the games enumerated

in the statute. (*Territory* v. *Apoliona,* 20 Haw. 109.)
\* \* \*"

The rule of *ejusdem generis* has been held not to neces-
sarily apply to other terms of gaming statutes. *State* v.
*Villines,* 107 Mo. App. 593, 81 S.W. 212; *Van Pelt* v. *State,*
193 Tenn. 463, 246 S.W. 2d 87; *Grafe* v. *Delgado,* 30 N.M.
150, 228 Pac. 601. This court in *Rep. Haw.* v. *Ben,* 10
Haw. 278, held that the *ejusdem generis* rule was not ap-
plicable to a criminal statute relating to profanity in a
public place.

There is no doubt that it was the intention of our legis-
lature to broadly prohibit so as to discourage gambling
in all its forms. *Territory* v. *Wong,* 40 Haw. 257. *Terri-
tory* v. *Naumu,* 43 Haw. 66, affirmed in *Naumu* v. *Terri-
tory,* 273 F. 2d 568. The sweeping language of our statute
clearly prohibits all forms of gambling games whenever
they may be devised and by whatever names they may be
called. It is not necessary that there should be new legis-
lation to meet each new invention. The legislative intent
was to make criminal the playing of any game so designed
that money or property is risked on the contingency of
winning some valuable reward. Bearing some resemblance
to the common denominator required for the application
of the rule of *ejusdem generis* is the thin thread, running
through all gambling games, of the prime object of win-
ning the award with the attendant possibility of losing
the stake put up.

In construing statutes, such as this one prohibiting
gambling games, wherein nothing is said about chance or
a game of chance or skill, many courts have required,
among other things, that the element of chance be proved,
but numerous other courts draw "no distinction between
chance and skill or games of chance and games of skill
but [condemn] all games upon which money or other
things of value are staked or wagered on the outcome;

taking the view that playing a game, whether of skill or chance, for money or other thing of value constitutes gaming or gambling." *Annotation, Games of Chance or Skill,* 135 A.L.R. 104, 107-108, Section II a.(3). We are satisfied that the latter holdings fall within the spirit of our gambling statute and the intention of the legislature to prohibit all forms of gambling in Hawaii. To come within the prohibition of our statute a game need not be a banking or percentage game. *Territory* v. *Apoliona, supra.* It need not be *ejusdem generis* with the games enumerated in the statute. *Territory* v. *Apoliona, supra,* cited in *Territory* v. *Uyehara, supra.* And it need not be dependent upon chance rather than skill. *Territory* v. *Tsutsui, supra.*

Defendant argues, however, that if the element of skill or chance is of no moment in determining whether a game comes within the prohibition of the statute, all that is required to violate the statute is to play a game in which something of value is lost or won, and that under such circumstances, every golf tournament, bowling tournament, pistol match, stock car race, track meet, swimming meet, football game, and a host of other activities, in which a prize or trophy or something of value is awarded to the participants, would also be plainly stamped as criminal activity forbidden by our gambling statute. We agree with the defendant that such patent absurdity was clearly not intended by our legislature.

It is an established canon of statutory construction that the reason and intention of the legislature control the strict letter of the law when the latter would lead to palpable absurdity. *Re App. C/C Clerk Regis. Buda,* 44 Haw. 220, 352 P. 2d 846; *Territory* v. *Fasi,* 40 Haw. 478; *In re Inter-Island Steam Nav. Co.,* 21 Haw. 6; *Shillaber* v. *Waldo,* 1 Haw. 31; R.L.H. 1955, § 1-18. It is also elementary that words or phrases in a statute cannot be

isolated and be given a meaning foreign to their context. *Cf.* R.L.H. 1955, § 1-18. To take a few words from their context and with them thus isolated to attempt to determine their meaning certainly would not contribute greatly to discovering the purpose of the draftsmen of a statute. Moreover, to give a literal meaning to general words within a statutory phrase would frequently lead to ridiculous results for general words often include something more than the scope and object of the statute require. The proper course is to search out and follow the true intent of the legislature and to adopt that sense of the words which harmonizes best with the context and promotes in the fullest manner the apparent policy and objects of the legislature. *Smithies* v. *Conkling,* 20 Haw. 600.

We are here dealing with a gambling statute. Since our legislature has seen fit to denounce gambling in all its forms, "any other game," besides those enumerated in the statute, in which money or anything of value is risked or hazarded on a contingency of winning some valuable reward, is interdicted, notwithstanding the element of skill or chance as we have said. But when read within its context the phrase "any other game in which money or anything of value is lost or won" refers to gambling and only gambling, for the normal and inclusive meaning of the phrase is limited by the particular context in which it is used. We are thus impelled to the conclusion that our legislature did not use the phrase "any other game" as an all-inclusive term but that it was used in its original meaning limited by its particular context.

The scope of the statute in prohibiting gambling games in any and all forms clearly excludes athletic contests or those in which the contestants pit their physical or mental skills, or both, against each other as the primary object. The language and tenor of the statute shows that no such contests were within the contemplation of the legislature.

Nor have they been considered as gambling games by the courts. A contest involving mental or physical skills, even where each competitor is required to pay an entrance fee, is not necessarily a gambling game. *Cf. People ex rel. Lawrence* v. *Fallon,* 4 App. Div. 82, 39 N.Y.S. 865, affirmed 152 N.Y. 12, 46 N.E. 296. It is interesting to note, in this connection, that the legislature of the Republic of Hawaii at its session in 1896 established the Honolulu Park Commission with power "to grant and terminate franchises and permits for public entertainments, competitive exercises and exhibitions, and to make and enforce regulations * * * for the conduct of such entertainments, competitive exercises and exhibitions * * *." *Laws of the Republic of Hawaii, 1896,* Act 53 at p. 165. The same legislature likewise provided for the licensing of "Billiards and Bowling Alleys" by Act 64, *Laws of the Republic of Hawaii, 1896.* This occurred within three years of the re-enactment of the gambling laws by Act 21, *Laws of the Provisional Government, 1893-4.*

This does not mean that all games of skill are per se immune. Any such game can, of course, be utilized for gambling purposes and as such would be subject to legislative censure but it is clear that they are not gambling per se. *Cf.* R.L.H. 1955, § 288-8.

Defendant contends that "Fascination" is a game of skill, or one in which the element of skill predominates over chance, and in support thereof offers the experimental findings of Dr. Robert Dillworth, Professor of Mathematics, California Institute of Technology. It is the professional opinion of Dr. Dillworth that "Fascination" is a game in which skill greatly predominates over chance. Be that as it may, the test of whether a game is one of skill or of chance, or one in which skill greatly predominates over chance, is not to be measured by the standard of experts or any limited class of players, but by that of

the average skill of a majority of players likely to play the game, for the purpose is to determine the primary object of the game and this is one of the ways of doing so. *Ruben* v. *Keuper,* 43 N.J. Super. 128, 127 A. 2d 906; *State ex rel. Dussault* v. *Kilburn,* 111 Mont. 400, 109 P. 2d 1113; *State* v. *Coats,* 158 Ore. 122, 74 P. 2d 1102; *State* v. *Ricciardi,* 18 N.J. 441, 114 A. 2d 257.

In *Ruben* v. *Keuper, supra,* the Superior Court of New Jersey considered the question of whether games similar to that involved here, also called Fascination and Pitch Fascination, were games of chance or of skill. They were determined to be games of chance. As we are in full accord with the reasoning of the court (though mindful of *Carll & Ramagosa, Inc.* v. *Ash,* 23 N.J. 436, 129 A. 2d 433, which may seem to disparage somewhat this reasoning, although the court there was dealing with another facet of the many sided concept of gambling), we quote a pertinent portion of the opinion:

"* * * There is no denial of the factual premise that a player can develop an expertness in either of the games presently under examination sufficient to enable him to compete successfully in a contest with a novice. But plaintiffs' operations do not consist of the conduct of contests of that kind. Plaintiffs' case must be judged by what they actually do, not by a theoretical analysis of an experiment that does not characterize what occurs in their establishments. The average game they run is one in which a score or more of casual boardwalk passersby of various degrees of inexpertness try their hand in competition with others of the same ilk, and against the house. These are games in which comparative novices can win an occasional prize and thus titillate themselves and others into continued participation. To them the lure is chance and not an opportunity to match skills. What-

ever one may say as to the expert, there can be no question but that the average or novice player is risking his dime against the lucky contingency that his balls will fall into a winning combination sooner than those of any other contestant; nor that in the long run he will lose more than he will gain * * *.

"* * * If 'gambling' is an appropriate characterization of the conduct of some or most of the participants in the games, the plaintiffs are engaged in a violation of the criminal laws of the State, notwithstanding that some of the players may be deemed so skilled as not to be gambling. But even a skilled player, competing against ten, twenty, or more average or casual players, any one of whom might win by pure chance, and the more the likelier, is gambling in the sense that 'judgment, practice, skill, and adroitness' may be 'thwarted by chance.' * * *" *Ruben* v. *Keuper,* 43 N.J. Super. 128, 134-135, 127 A. 2d 906, 909-910.

Although defendant's claim that "Fascination is a game where skill predominates over chance" is dubious,[1] we do not base our decision on this ground since apart from the question of skill, it is still a gambling game within the purview of the statute. Every player of "Fascination" pays a playing fee of ten cents. It is obvious from the character of the game that each player stakes his fee on a chance of winning something of value, be it a prize or a free game. Some customers get something; some get nothing; some more; some less. In this lies the test of what this device really is, and the theory upon which it is conceived and operated, namely to induce customers to play and keep playing with the expectation of getting more than their money's worth. It does not matter which customers are successful as it is perfectly

---

[1] The court below found that whether or not the element of skill predominates chance is of no materiality. We concur.

plain that one part of the public pays in money for what another part of the public gets in prizes. In other words, these machines are designed to play one part of the public against another part for the purpose of inducing the whole public to take the chance of gain. The vice consists not alone in the amount of money risked in playing, but also in the encouragement of the gambling instinct latent in most people.

Next, the assignments of error raise the question of whether something is "lost or won," as these words are used in Section 288-4, Revised Laws of Hawaii 1955, in the game of "Fascination."

What has already been said elsewhere in this opinion largely disposes of this contention.

The facts of the case are not in dispute. While participants pay for the right to play the game of "Fascination," their obvious objective is the winning of a prize. Prizes are awarded by the management in the form of coupons which may be used to redeem merchandise or for the playing of additional games.

In a pinball game, the participant inserts a five-cent coin to start the game. Upon the attainment of a certain score, free games are allowed. This was ruled to be in violation of our gambling statute by this court in that free games come within the meaning of "anything of value." *Territory* v. *Uyehara, supra.* As in "Fascination" a nonparticipant gives the prize.

In view of the holding in *Territory* v. *Uyehara, supra,* to the effect that free games constitute something of value "lost or won" we can only conclude that something is "lost or won" as those words are used in Section 288-4, Revised Laws of Hawaii 1955, in the game of "Fascination."

Having construed the phrase "any other game" to mean, in substance, "any other gambling game," we finally consider the question whether this phrase is so vague and

indefinite that it denies to the defendant the due process of law.

Defendant in asserting that the gambling statute is constitutionally vulnerable for uncertainty relies on the fundamental rule set down in *Connally* v. *General Const. Co.*, 269 U.S. 385, to the effect that the terms of a penal statute creating an offense "must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." (p. 391.)

There can be, of course, no quarrel with the rule above stated. However, we find that the phrase "any other game in which money or anything of value is lost or won" when read in the context of the statute provides an ascertainable standard of conduct. "[S]uch all-embracing and catch-all phrase is necessary to meet the ingenuity of those who are intent upon circumventing the law. A new method of circumvention necessarily raises a question as to the applicability of the law to the invention. The fact that such question is raised does not make the law uncertain in a constitutional sense. Those who devise means of circumvention take the risk of treading on the brink of the law. * * *" *Territory* v. *Naumu*, 43 Haw. 66, 70. Despite the expansiveness of the phrase "any other game" in view of the context in which it is used, it means gambling game.

"The word *gamble* is perhaps the most apt and substantial to convey the idea of unlawful play, that our language affords. It is inclusive of hazarding and betting as well as playing." *Bennett* v. *The State*, 10 Tenn. (2 Yerg.) 472, 474; *cf. Allen* v. *Commonwealth*, 178 Ky. 250, 198 S.W. 896.

A statute will not be held unconstitutional by reason of uncertainty if any sensible construction embracing the legislative purpose may be given it. Mere difficulty in

ascertaining its meaning, or the fact that it is susceptible to interpretation will not render it nugatory. *Adams* v. *Greene,* 182 Ky. 504, 206 S.W. 759.

In *State* v. *Livingston Concrete Bldg. & Mfg. Co.,* 34 Mont. 570, 87 Pac. 980, the court held that although the intention of the legislature might have been expressed in plainer terms, a court will not hold a solemn legislative enactment of no force or effect because of its indefinite language, unless the court finds itself unable to define the purpose or intent of the legislature. The function of the court is to determine and make known, if possible, such purpose or intent, the intention of the legislature being the essence of the law. And *cf. Hunt* v. *State,* 195 Ind. 585, 146 N.E. 329.

Nor is it required that the acts or conduct intended by the legislators to be prohibited be specified or designated in order to make a statute sufficiently certain under constitutional requirement. *Lorenson* v. *Superior Court,* 35 Cal. 2d 49, 216 P. 2d 859.

This principle has been stated more clearly in the following language:

"A gambling game, within the general language of an ordinance prohibiting the playing of any such game, is not taken out of the operation of the ordinance by the fact that the general language is preceded by an enumeration of the prohibited games which does not include the particular one in question." 24 Am. Jur., *Gaming and Prize Contests,* § 4, p. 400.

The statute here involved is not a novel one in the realm of general law. As seen it has existed in the present form since its re-enactment in 1893, as Act 21. Further, since its enactment in 1893, Section 288-4, Revised Laws of Hawaii 1955 (Section 11343, Revised Laws of Hawaii 1945), has survived without amendment any number of attacks regarding its constitutionality. In *Territory* v.

*Wong, supra,* at 263, this court in rejecting a contention similar to that now made upheld the rule that a reasonable and adequate disclosure of the legislative intent regarding the evil to be denounced in language giving notice of the practices to be avoided conforms to the requirement of the Constitution of the United States:

"Factual situations, it is urged, have developed in past prosecutions under section 11343 which border upon the dividing line of lawful and unlawful presence. 'Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so * * * and if he does so it is familiar to the criminal law to make him take the risk.' (*United States* v. *Wurzbach,* 280 U.S. 396, 399, 74 L. Ed. 508, 50 S. Ct. 167.)

"That the prohibition of gaming is within the police power of the Territory is too well settled to necessitate the citation of precedent. Since the purpose of enactment of section 11343 is within that power, this court will not question the legislative methods adopted to eliminate the evils of gaming.

"We find that section 11343 conveys sufficiently definite warning of proscribed conduct when measured by the common understanding and practices employed in gaming. * * *"

In *Naumu* v. *Territory, supra,* the United States Court of Appeals for the Ninth Circuit upheld the decision of this court in *Territory* v. *Naumu, supra,* limiting itself to the constitutional issue. In this connection the court stated that appellant's reliance on *Connally* v. *General Const. Co., supra,* and here relied upon by defendant, was without merit saying at page 570: "There can be no doubt of the intent of the Hawaii legislature to prohibit gambling

in all its forms. The statute specifically includes within its wide application the carrying on of any game in which anything of value is won."

Continuing, the court had this to say:

"The statute in its present form has survived many attacks made upon its constitutionality before the Territorial Supreme Court. In Territory v. Wong, 1953, 40 Haw. 257, 263, in rejecting the contention that the statute was void for uncertainty, the court stated:

" 'Each of the foregoing may be answered by applying the statute in the reasonable and direct purport of its enactment to prohibit as well as discourage all types of gaming * * *.'

"The question before us is simply whether Naumu (having in mind the broad language of the statute and its past construction by the courts of Hawaii) should have realized that the right to play a game for which a charge is customarily made is a thing of value under the statute. In our view, he should have."

In view of the intention of our legislature to prohibit all forms of gambling, coupled with this court's endeavor to give meaning and force to its gambling statutes, no basis can be given for supporting defendant's contention that Section 288-4, *supra,* is so vague, indefinite and uncertain as to deprive her of her constitutional rights of due process.

Defendant should have known that the game "Fascination" where the players are charged a sum of money to participate and where the winner of the game receives a coupon or coupons redeemable in prizes or which could be used to play additional games, was a gambling game in violation of our statute. "Their operations involve wagers, bets or stakes which are dependent upon contingent events and the keeping of places for such purposes. The player pays a participating fee and receives a prize

upon a later happening which may or may not occur; it matters not that the prize is money's worth rather than money itself or that the money risked by the player on a single game is small. In substance, the operator wagers with the player that he will not achieve the result which entitles him to the prize; if the player fails he forfeits what he has put up and receives no prize in return; if he succeeds the operator retains what was put up but forfeits the prize." *Carll & Ramagosa, Inc.* v. *Ash, supra,* at 438.

Affirmed.

*Albert W. Evensen* (*Wallace S. Fujiyama* with him on the briefs) for plaintiff in error.

*John H. Peters,* Prosecuting Attorney, (also on the brief) for defendant in error.