WELDON GASKILL v. STATE OF DELAWARE.

(*January* 16, 1958.)

STOREY, J., sitting.

*Max S. Bell, Jr.,* for the defendant.

*Richard J. Baker,* Deputy Attorney-General, for the State.

Superior Court for New Castle County, No. 244, Cr. A., 1957.

STOREY, J.:

Defendant entered a plea of guilty to a charge of escape from the custody of the State Board of Corrections, contrary to 11 *Delaware Code,* § 105, and was sentenced by this Court for a term of four months to commence at the termination of the sentence he was then serving.

On June 4, 1957, while the defendant had been duly committed to the custody of the Delaware State Board of Corrections, he escaped from said custody. The escape was accomp-

lished by walking away from the outside employment to which he had been assigned by reason of his status as a trusted prisoner.

The question presented for consideration is: "Did the defendant commit the crime of "escape"?

Escape is defined in 19 *Am. Jur.,* Page 361, as follows:

"An escape has been broadly defined as the voluntary departure of a person without force from the lawful custody of an officer or from any place where he is lawfully confined, or as it is more tersely stated, the unlawful departure of a prisoner from the limits of his custody or the act of a prisoner in regaining his liberty before released in due course of law."

It is also stated in *Clark and Marshall on Crimes,* 5th Edition, Section 451, as follows:

"It is a misdemeanor at common law, and very generally under statutes in the different jurisdictions, for any person who is lawfully in custody for a criminal offense to escape from such custody before he is delivered in due course of law."

The statute under which the prisoner was released for employment is to be found in Title 11, Chapter 65, Section 6562(b), which reads as follows:

"Any person employed under the provisions of this section shall continue to be in the legal custody of the Board, notwithstanding his absence from an institution by reason of such employment, and any employer of any such prisoner shall be considered the representative of, or the keeper of the Board."

Since 1921, it has been lawful for prisoners to be employed outside the prisons, and at the time of the commission of the offense in question, such outside employment was authorized by the statute referred to hereinabove.

■ It can hardly be successfully argued that the General Assembly, by the passage of the statute above referred to, providing for the outside employment of prisoners, intended that

such prisoners would not be subject to the provisions of Section 105, Title 11, *Delaware Code of* 1953.

On the contrary, it seems clear that it was the intention of the General Assembly to make such prisoners subject to the provisions of Title 11, Section 105 by expressly providing that the legal custody of such prisoner should continue in the Board, notwithstanding his absence from an institution by reason of such employment, and providing further that any employer of any such prisoner shall be considered the representative of or the keeper for the Board.

Even though the custody created by the provisions of 11 *Delaware Code,* Section 6562(b) was unknown at common law, it does not follow that the General Assembly, in order to carry out the enlightened policy of permitting outside employment of prisoners, is not empowered to define or enlarge the element of custody in the crime of escape without otherwise affecting the elements of this Common Law Crime.

The prisoner in this instance was in lawful custody and "a prisoner who gains his liberty from lawful custody before he is delivered therefrom by due process of law commits the crime of escape." 30 *C. J. S.* Escape § 2(a), p. 1142.

Motion, therefore, is denied and order will be entered accordingly.