## STATE v. SIDNEY WILLIAM JONES.

124 N. W. (2d) 729.

October 25, 1963—No. 38,723.

*Whitney E. Tarutis,* for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent.

FRANK T. GALLAGHER, C.

Appeal from a judgment of the district court.

In an amended information dated December 11, 1961, the state

charged that defendant, on or about September 13, 1961, while in the lawful custody of the sheriff of Beltrami County "following and pursuant to a charge of rape, a felony, and not having been discharged therefrom, did then and there wilfully, wrongfully, unlawfully and feloniously escape" from such custody without the permission of the sheriff or of his deputies, contrary to the provisions of Minn. St. 613.29, "said acts constituting the crime of Escape." The case was tried in district court before a jury which found him guilty as charged.

The sheriff of Beltrami County testified that when he entered the jail on the morning of September 13, he found that four prisoners, including defendant, who had been incarcerated in the jail for some time were missing. He discovered that two of the cell block doors were opened and that a window casing in the upstairs on the east side of the jail had been broken out. He also observed that a few bricks had been chipped out widely enough to permit entrance or exit of a slender person. The sheriff believed—without checking his records —that he had 26 prisoners in the jail on the night of September 12. He testified that defendant and one other missing prisoner had been among the prisoners on the first floor and that the other two missing prisoners had been among those on the second floor of the jail.

After his discovery the sheriff alerted other police officers in the area in an effort to effect the recapture of defendant and the other missing prisoners. Francis Downwind, Jr., a member of the Red Lake police force, testified that at about 2 p. m. on the afternoon of September 13 he was alerted about the escape from custody of the prisoners. When the officer went on duty about 9 p. m. that evening, some information had been received as to the possible location of the missing prisoners. A search was made by the witness and others at that location which was unsuccessful. He returned to his station about 2:10 a. m. on the morning of September 14.

Upon his return he got another report and he and another officer "went * * * west of Red Lake to Melvin Feather's residence," arriving there about 2:30 that morning, but did not then see defendant or Feather. A little later they recognized a car as the one they were looking for and trailed it to Ponemah Village. There the car was

parked by a "water puddle." When the lights from the officer's car "hit the car" that was parked, Downwind saw two men and a girl jump out of it and run.

The officer said that he chased them. He caught up with the girl and returned her to the car, where he told her to stay. He then "immediately went back to the woods and made a search and * * * came upon Sidney William Jones," the defendant, who was one of the persons whom he had seen leave the parked car. He found defendant in the woods about 300 or 400 feet back from the main road, "lying on his stomach." The witness said that as soon as the light from his flashlight "hit him," and before Downwind said anything, defendant said, "Don't shoot; I give up." The officers then took him into custody. Downwind was asked:

"Q. And what did he then say to you, and what did you say to him?

"A. Well, that is all he said, 'Don't shoot; I give up.' And he put his hands behind his back and we handcuffed him and Officer Yellow took him into the car, the police car."

This was about 3:45 in the morning of September 14. They put defendant in the back of their police wagon, together with other men captured at that time, and confined him in the Red Lake police station until he was returned later that day to the Beltrami County jail. The witness identified the defendant at the trial as the same person he had taken into custody.

The legal issues raised by defendant on appeal are: (a) That the judgment is not justified by the evidence and is contrary to law; and (b) that there were errors of law and abuse of discretion on the part of the trial court which deprived defendant of due process of law and a fair trial.

Defendant argues that there was no evidence to show that he did anything which can be interpreted as an act of voluntary departure from his confinement or custody; or that his departure was attained by any unlawful act or means on his part. He contends that the circumstance of his absence from jail is equally consistent with innocence or guilt. It is defendant's further position that the state proved only

that he was in legal custody and that he had not been released by due course of law when his absence was discovered, but did not produce evidence to show that his departure was willful and voluntary.

As has been stated, the information charged that defendant "wilfully, wrongfully, unlawfully and feloniously" escaped from custody without the permission of the sheriff or his deputies, contrary to Minn. St. 613.29. That statute, so far as pertinent here, provides:

"Every prisoner confined in a penal institution, or being in the lawful custody of an officer or other person, who shall escape from such institution or custody or who shall depart from such institution or custody without the permission of the authorities of such institution, or of the officer or person having him in custody, * * * if he is held on a charge or conviction of felony, shall be guilty of a felony * * *."

An "escape" has been broadly defined as the voluntary departure of a person without force from the lawful custody of an officer or from any place where he is lawfully confined, or, more tersely stated, the unlawful departure of a prisoner from the limits of his custody or his acts in regaining his liberty before released in due course of law. 19 Am. Jur., Escape, Prison Breaking, and Rescue, § 2. An actual escape —that is, an escape in common meaning—takes place when a prisoner gets out of prison or any place in which he may be lawfully confined, or from and out of the authority in whose custody he is, and unlawfully regains his liberty, free from the authority and control of the power entitled to restrain him. Id. § 5. 3 Wharton, Criminal Law and Procedure, § 1367, states that an escape is committed whenever by any unlawful means a criminal in lawful custody voluntarily leaves and gains his liberty before he is delivered in the due course of law. Perkins, Criminal Law, p. 432, states that "a prisoner who goes beyond the prison walls unlawfully, with intent to keep going, is guilty of escape although immediately recaptured."

Although there is no direct evidence in the instant case to show that the defendant voluntarily departed from the jail at the time involved, there is circumstantial evidence permitting an inference that his departure was a voluntary one with an intent to escape within the meaning of § 613.29.

The testimony of Officer Downwind, to whom the defendant surrendered in the woods in the early morning of September 14, permits an inference that his "escape" was a voluntary and unlawful departure from the lawful custody of the sheriff and from the limits of his custody.

An inference is a permissible deduction a factfinder is entitled to draw from the proven or admitted facts. The facts may be established by circumstantial evidence. State v. Meany, 262 Minn. 491, 115 N. W. (2d) 247.

Here, the record shows that Officer Downwind drove up near the car in which defendant and another man and woman were parked. When the lights from the officer's car were cast on the parked car, defendant and the others ran. Downwind followed defendant some 300 or 400 feet into the woods at about 3:45 in the morning and found him lying on the ground. Before the officer could say a word to him, defendant said, "Don't shoot; I give up."

His flight from the automobile in which he had been riding; his attempt to hide in the woods at 3:45 a. m.; his telling the officer not to shoot and that he would give up all were circumstances which would permit a jury to infer that he was trying to avoid being captured and returned to the jail from which he departed during the previous night. In addition, we have evidence of the open doors of the cell blocks, the broken-out window casing, the bricks chipped to open a space wide enough to permit a slender person to pass through. All of these facts constituted circumstantial evidence from which a jury could infer that defendant was one of the persons who participated in the unlawful escape from jail and that he voluntarily left that place on the night of September 12 or early morning of September 13.

Defendant contends that his mere absence from the Beltrami County jail was not in and of itself evidence that his departure was willful and voluntary and that there was no evidence from which the jury could draw a reasonable inference of his voluntary departure. To do so, he claims, would be the grossest type of conjecture and speculation. In that connection he orally cited State v. Meany, supra. The fact situation in that case was different from the case at bar. The defendant

there was charged with criminal negligence. Intoxication was not specified in the indictment nor was there any evidence of it. It was shown that during the noon hour and late afternoon the defendant did have a few intoxicating drinks. There was absolutely no evidence, opinion or otherwise, that he was intoxicated either during the afternoon or immediately prior to the accident. Despite this lack of evidence, however, the prosecuting attorney was permitted to argue to the jury that they could draw an inference that defendant was intoxicated and for that reason ran away from the accident. This court said there that the facts may be established by circumstantial evidence, but where there is no evidence, direct or circumstantial, to support an inference any conclusion based thereon becomes merely a conjecture. We do not consider that case controlling under the facts and circumstances here.

In support of defendant's claim that errors of law and abuse of discretion by the trial court deprived him of due process of law and a fair trial, he urges that it was prejudicial, biased, and an abuse of discretion on the part of the trial judge to overrule his objection to the admission of the information on file charging defendant with the crime of rape. He contends that witnesses for the state had previously testified as to the facts and nature of the custody of the defendant, and that it was substantial prejudice to admit the entire information in evidence, thus emphasizing in the minds of the jury the details of the rape charge pending against him and inviting biased inferences by the jury not based upon evidence.

The record shows that the clerk of court testified that the defendant was charged with the crime of rape. It further shows that the sheriff also testified that on August 24, 1961, pursuant to a warrant issued out of the probate court of Beltrami County, he took the defendant into custody for the crime of rape alleged to have been committed in said county.

It is our opinion under the record here that is was not good practice for the trial judge to overrule defendant's objection to the admission of the information charging defendant with the crime of rape. The testimony of the clerk of court and of the sheriff amply informed the jury

as to the nature of the crime with which defendant was charged. While the information was relevant and admissible for the purpose of showing that the defendant was in custody under a felony charge for the crime of rape, it was only cumulative with the other testimony and might have had some prejudicial effect, especially where the details are revealed. However, our examination of the record satisfies us that prejudice was not sufficiently demonstrated to warrant a reversal on that ground, especially where defendant did not concede that he was in lawful custody under a felony charge.

The court instructed the jury that the defendant is presumed to be innocent until that presumption is overcome by proof that satisfies each juror of his guilt beyond a reasonable doubt. It explained the law relating to escape and the essential elements of this crime which the state was required to prove. It also instructed the jury with respect to direct and circumstantial evidence, stating in part: "However, the defendant cannot be convicted on pure speculation and conjecture, but after considering all the evidence in the case, both direct and circumstantial, you must be convinced beyond a reasonable doubt that the defendant is guilty before you can bring in a verdict of guilty."

It is our opinion that the trial court should be affirmed.

Affirmed.