STATE OF HAWAII, Plaintiff-Appellee *v.* KENNETH ALLAN SMITH, Defendant-Appellant

NO. 6275

AUGUST 21, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

On August 13, 1975, Kenneth Allan Smith (hereinafter appellant) was indicted by the Oahu Grand Jury for the offense of escape in the second degree, in violation of section

1021 of the Hawaii Penal Code (HPC).[1] The instant appeal is taken by appellant from his conviction of this charge. We affirm.

The charge stems from an incident which occurred on November 3, 1974. On that date, the appellant was given a day pass which allowed him to leave the confines of the Hawaii Youth Correctional Facility (HYCF) at Kawailoa to which he had been duly committed by the family court. He was over sixteen and a half years of age at the time of the alleged offense. The pass allowed him to remain off the facility from 8:00 A.M. to 7:00 P.M. It was the usual practice of the HYCF staff to inform all residents leaving on a day pass that they must return by 7:00 P.M. That instruction was also printed on the pass card which appellant had in his possession before he left the facility. Appellant failed to return at the required hour but appeared at the facility eight and one half hours later at 3:30 A.M., on November 4.

The following facts are also relevant to the issues raised in this appeal. On November 14, 1974, the appellant left the HYCF without permission and was apprehended by the police the next day. Between December 5, 1974, and January 20, 1975, the appellant was again absent without leave from HYCF. On April 16, 1975, the appellee-state requested the waiver of the family court's jurisdiction over the appellant because of the escapes allegedly committed on November 3, 1974, and November 16, 1974, and the theft and robbery offenses allegedly committed by him in January, 1975. After conducting a full investigation and hearing as to these matters as required by HRS § 571-22(a) (1976 Repl.) the family court granted the petition on June 17, 1975, and waived its jurisdiction over appellant. On August 13, 1975, the grand jury returned its nine count indictment against appellant. On Oc-

---

[1] Section 1021, HPC, is now set forth in HRS § 710-1021 (1976 Repl.), and it reads:

*Escape in the second degree.* (1) A person commits the offense of escape in the second degree if he intentionally escapes from a correctional or detention facility or from custody.

(2) Escape in the second degree in a class C felony.

tober 9, 1975, the appellant requested a severance of the counts contained in the aforementioned indictment. The trial court granted appellant's request on December 18, 1975. On January 5, 1976, jury trial commenced against appellant on the theft and robbery charges, counts III to IX, contained in the August 13, 1975 indictment. At the conclusion of that trial, he was convicted on five of the six robbery counts. On April 15, 1976, appellant filed a motion to dismiss the indictment as to the present escape charge. The trial court denied this motion. On May 7, 1976, appellant was found guilty as charged in a jury waived trial.

Appellant proffers four contentions of error on this appeal. First, he argues that the trial court erred in refusing to grant his motion for judgment of acquittal made at the close of the prosecution's case pursuant to Rules of Criminal Procedure (H.R.Cr.P.), Rule 29(a).[2] Second, he maintains that the appellee-state failed to prove intent to escape as a necessary element of the crime charged. Third, he contends that the conviction for escape must be reversed because the family court erred in waiving jurisdiction over him. Fourth, that even if the family court could have waived jurisdiction, the instant conviction must be reversed because appellant was deprived of his right to a speedy trial.

I.

At the conclusion of the state's case, appellant moved for a judgment of acquittal pursuant to H.R.Cr.P., Rule 29(a), on

---

[2] The Hawaii Rules of Criminal Procedure prevailed at the time of the trial in this case. Rule 29(a) of these rules read as follows:

(a) *Motion for Judgment of Acquittal.* Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

the ground that the state failed to prove that an offense proscribed by section 1021 of the HPC was committed. The issue of whether the trial court should have granted that motion is tested against the standard which we set forth in *State v. Cannon*, 56 Haw. 161, 163, 532 P.2d 391, 394 (1975).

> To deny a motion to acquit there must be sufficient evidence to support a prima facie case. The evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the factfinder to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *State v. Rocker*, 52 Haw. 336, at 245-246, 475 P.2d 684 at 690 [(1970)].

*See State v. Stuart*, 51 Haw. 656, 466 P.2d 444 (1970); *State v. Kekaualua*, 50 Haw. 130, 433 P.2d 131 (1967).

The determination of whether the state produced evidence sufficient to establish a prima facie case depends upon the elements of the crime charged. Section 1021(1) of the HPC states that, "[a] person commits the offense of escape in the second degree if he intentionally escapes from a correctional or detention facility or from custody." Herein, appellant contends that because he was on leave from the HYCF he could not have escaped from the facility by merely failing to return thereto. In addition, he maintains that he was not in custody because he was released to a sponsor who was not a public servant.[3] He was therefore not in custody as defined by HRS § 710-1000(3) (1976 Repl.), which states, " 'custody' means restraint by a public servant pursuant to arrest, detention, or order of a court."

We are aware of the provisions of HRS § 701-104 (1976 Repl.) which states the principles of construction for the Hawaii Penal Code. That section provides:

> The provisions of this Code cannot be extended by analogy so as to create crimes not provided for herein;

---

[3] Public servant is defined by HRS § 710-1000(15) (1976 Repl.) as, "any officer or employee of any branch of government, whether elected, appointed, or otherwise employed, and any person participating as advisor, consultant, or otherwise in performing a governmental function, but the term does not include jurors or witnesses; . . . ."

however, in order to promote justice and effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of the words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

As originally proposed to the legislature by the Judicial Council of Hawaii, which had drafted the Code, this section read:

The rule that a penal statute is to be strictly construed does not apply to this Code, but the provisions herein must be construed according to the fair import of their terms.

When the legislature adopted the HPC in 1972, it rejected the rule of construction proposed by the Judicial Council of Hawaii, and instead adopted the language of HRS § 701-104 (1976 Repl.). In this connnection the Conference Committee Report 2-72, on H.B. No. 20, which became the HPC, stated that the intent of the Committee was "that definitions of crime are to be strictly construed."[4]

In this respect, we have consistently adhered in this jurisdiction to the rule of strict construction of penal statutes. *State v. Rackle*, 55 Haw. 531, 523 P.2d 299 (1974); *Coray v. Ariyoshi*, 54 Haw. 254, 506 P.2d 13 (1973); *State v. Good Guys for Fasi*, 56 Haw. 88, 528 P.2d 811 (1974). However, such a rule does not override the other fundamental principles of construction that it must yield to the legislative will, or that it does not require the rejection of that sense of the words which would harmonize best with the design of the statute or the end in view. *State v. Prevo*, 44 Haw. 665, 361 P.2d 1044 (1961); *Territory v. Palai*, 23 Haw. 133 (1916). As we said in *State v. Prevo, supra:*

Even the rule that penal statutes are to be strictly construed does not permit a court to ignore the legislative

---

[4] See Hawaii Senate Journal 1972, 6th Leg. Regular Session, Conference Committee Report 2-72, at 740.

intent, nor does it require the rejection of that sense of the words used which best harmonizes with the design of the statute or the end in view.

44 Haw. at 669, 361 P.2d at 1047.

It would seem to us that if the legislature meant to qualify the word "custody" by the restrictive term "actual," so that custody would mean only actual custody, it could have very easily defined it by stating such a requirement. It is clear to us that by not defining custody to give it a narrow application, the legislature manifestly intended that an escape could be perpetrated by a person even though he is not in actual physical custody or under immediate control and supervision of a guard. In our opinion, this broader view of custody is consistent with the legislative policy, with the sense which best harmonizes with the design of the statute, and does no violence to the end or object in view. *See* Commentary on HRS § 710-1021 (1976 Repl.).[5] It is evident to us that intentional failure to return to physical confinement would fall within the definition of escape from custody. Therefore, appellant's argument that he was not in custody because he was not under immediate supervision of a guard is not persuasive.

Moreover, we prefer to adopt what we understand to be the majority view that continued custody is not affected by the temporary release from physical control over an inmate. *See Smith v. State*, 361 A.2d 237 (Del. 1976). In *United States v. Rudinsky*, 439 F.2d 1074 (6th Cir. 1971), the appellant who was charged with escape from the Federal Community Treatment Center in Detroit, Michigan, asserted a contention similar to the one made here. In that case appellant was permitted to leave the Treatment Center between 6:00 A.M. and 6:00 P.M. for the purpose of holding regular employment and eating his meals. After two weeks, he failed to return at the prescribed time and did not inform anyone at the center of

---

[5] Commentary to HPC sheds some light on the purpose of the Code's provisions, although it was not intended to be a definitive statement of legislative intent. *State v. Nobriga*, 56 Haw. 75, 77, 527 P.2d 1269, 1273 (1974).

his whereabouts. He was apprehended by federal agents three months later and indicted for escaping from federal custody in violation of 18 U.S.C. § 751(a). In response to appellant's argument that he was not in custody at the time he escaped, the court stated:

> Although it is true that the appellant was permitted a degree of freedom at the Treatment Center, we find that he was still in "custody" during his term there. A person may still be in custody even though not under constant supervision of guards, so long as there is some restraint upon his complete freedom. (Citation omitted.) Here it is apparent that the Treatment Center's restrictions deprived appellant of his freedom of movement and association. He was therefore in custody within the purview of 18 U.S.C. § 751.

439 F.2d at 1076-1077. *See McCullough v. United States*, 369 F.2d 548 (8th Cir. 1966); *Nace v. United States*, 334 F.2d 235 (8th Cir. 1964).

In *Smith v. State, supra,* the defendant claimed that his failure to return from furlough did not constitute escape because he was not in actual custody while on furlough. The court disagreed, saying that implicit in the concept of furlough is the theory that furlough merely extends the limits of custody according to its terms. 361 A.2d at 238. Even when a prisoner is so released he is clearly not free from restraint; "he is deemed to be aware that his movements are restricted according to the limitation of time, place, and purpose imposed by the terms of the furlough." *Id.,* at 239; *accord, People v. Herrera*, 255 Cal.App.2d 469, 63 Cal.Rptr. 96 (1967); *see Price v. State*, 333 So.2d 84 (Dist. Ct. App. Fla. 1976).

To the extent that appellant was confined to the youth correctional facility during his minority his status with respect to his liberty was restricted, similar to an inmate or prisoner. While the facility did not have actual physical control over the appellant at the time he is alleged to have escaped, it had control and custody in the sense that appellant was released on furlough not as a free person but as one

legally bound by restrictions.

In *State v. Laurie*, 56 Haw. 664, 670, 548 P.2d 271, 276 (1976), we said that intent may be proven by circumstantial evidence. Herein, prosecution witnesses testified that on the date of the incident in question, appellant carried a pass card which had the curfew time printed upon it and that he was not given permission to return late. This quantum of evidence is sufficient to overcome the motion to acquit test announced in *Cannon, supra*. Therefore, the trial court did not err in declining to grant the motion for judgment of acquittal.

## II.

Appellant contends that the trial court as trier of fact erred in finding beyond a reasonable doubt intent to escape as an element of the offense charged. The sufficiency of the evidence necessary to sustain a conviction is ascertained by applying this Court's test stated in *State v. Cummings*, 49 Haw. 522, 533, 423 P.2d 438, 445 (1967).

> It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for conviction. [Citations omitted.] The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact. Further, the rule is the same whether the accused has been tried before a judge or a jury. [Citations omitted.]

*State v. Tamanaha*, 46 Haw. 245, 251, 377 P.2d 688, 692 (1962); *Rocker, supra*. We have held in Part I of this opinion that the evidence before the trial court, including that of intent to escape, presented by the state was undisputed and substantial. No other evidence was before the trial court. Under the circumstances such a holding should be adequate to resolve this case against appellant.

Appellant contends, however, that he did not have intent to escape when he left the HYCF. He argues that because

there was no evidence that he had the intent to escape when he left the facility, he could not be found guilty of the offense charged. However, physical departure from confinement need not coincide with the formulation of intent to escape for the offense to have been committed. *Chandler v. United States*, 378 F.2d 906 (9th Cir. 1967); *Helton v. State*, 311 So.2d 381 (Dist. Ct.App.Fla. 1975); *see United States v. Woodring*, 464 F.2d 1248 (10th Cir. 1972). We hold that evidence of the appellant's formulation of the intent to escape prior to physical departure from HYCF was unnecessary.

## III.

Appellant further contends that the family court erroneously waived its jurisdiction over him by allowing him to be charged as an adult. Generally speaking, a family court has exclusive and original jurisdiction in proceedings concerning any person prior to attaining eighteen years of age who is alleged to have committed an act which would constitute a violation of law. HRS § 571-11(1) (1976 Repl.). However, HRS § 571-22(a) (1976 Repl.) allows a family court to waive its jurisdiction over the person of a minor sixteen years old or older who committed an act which would constitute a felony if committed by an adult.[6] A decision by the family court to

---

[6] HRS § 571-22 (1976 Repl.) states in pertinent part:

(a) The court may waive jurisdiction and order a minor or adult held for criminal proceedings after the full investigation and hearing where the person during his minority, but on or after his sixteenth birthday, is alleged to have committed an act which would constitute a felony if committed by an adult, and the court finds there is no evidence the person is committable to an institution for the mentally defective or retarded or the mentally ill, is not treatable in any available institution or facility within the State designed for the care and treatment of children, or that the safety of the community requires that the person continue under judicial restraint for a period extending beyond his minority.

(b) Transfer of a child sixteen years or older for criminal proceedings terminates the jurisdiction of the court over the child with respect to any subsequent acts which would otherwise be within the [family] court's jurisdiction under section 571-11(1) and thereby confers jurisdiction over him to a court of competent criminal jurisdiction.

waive jurisdiction is, of course, discretionary. *See State v. Tominaga*, 45 Haw. 604, 372 P.2d 356 (1962). Such a waiver of jurisdiction would entail the family court's conducting a full investigation and hearing before a waiver can be granted. No question has been raised by appellant as to such investigation and hearing.

Appellant raises the issue whether a minor's departure from the HYCF prior to May 5, 1976,[7] without official permission would constitute a felony. Appellant's theory is that since only minors could be confined to HYCF prior to May 5, 1976, it would be impossible for adults to escape from that institution. He therefore reasons that adults would not be able to commit a felony by escaping from a youth correctional facility. From such argument, he concludes that the family court was without authority to validly waive its jurisdiction over appellant under HRS § 571-22(a) (1976 Repl.). We disagree.

We interpret the word "act" as used in the clause which appears in HRS § 571-22(a) (1976 Repl.) reading "where the person during his minority, but on or after his sixteenth birthday, is alleged to have committed an act," as referring to conduct as well as to the requisite state of mind of the appellant regarding his failure to return to the place of his confinement. Where the act of a minor includes all of the elements that would constitute the commission of a felony by an adult, the family court may in its sound judicial discretion consider the waiver of jurisdiction of such minor. We do not consider the fact that an adult could not be legally confined to the HYCF as relevant to the determination of whether appellant's alleged act, when measured by the standard for an adult, would constitute a felony. *See State v. Medicine Bull*, 152 Mont. 34, 41, 445 P.2d 916, 921 (1968). Thus, escape could occur regardless of the place of the prisoner's

---

[7] See Act 58, S.L.H. 1976, which amended various sections of HRS ch. 352 to provide that adults up to the age of 19 may be confined at the Hawaii Youth Correctional Facility. This Act took effect on May 5, 1976.

confinement.[8]

Therefore, we think that under the first paragraph of section 1021 of the HPC, the alleged escape by appellant from the youth correctional facility involved the voluntary and intentional conduct on the part of appellant as manifested by his departure from lawful custody which was followed by his intentional failure to return at the required time. *State v. Jones*, 266 Minn. 526, 124 N.W.2d 729 (1962); *Gaskill v. State*, 51 Del. 107, 138 A.2d 500 (1958); *Commonwealth v. Bey*, 221 Pa.Super. 405, 292 A.2d 519 (1973). Such an act would be a felony if committed by an adult.

Moreover, the failure to return from furlough with intent to escape from a correctional or detention facility or from custody is a felony which may be committed by an adult, as indicated by *Rudinsky, supra, McCullough, supra, Nace, supra, Smith, supra, Herrera, supra,* and *Price, supra*. We conclude that the family court did not err in the exercise of its sound judicial discretion under HRS § 571- 22(a) (1976 Repl.) by waiving its jurisdiction over appellant for the alleged escapes on November 3, 1974, and November 16, 1974, and the alleged theft and robberies offenses. *See In Re State in Interest of M.S.*, 129 N.J.Super. 61, 322 A.2d 202 (Juv. & Dom. Rel. Ct. N.J. 1974), *aff'd.*, 139 N.J.Super. 503, 354 A.2d 646 (App.Div.N.J. 1976), *rev'd on other grounds* (a juvenile in need of supervision who leaves a shelter without permission does not commit a criminal escape) 73 N.J. 238, 374 A.2d 445 (1977); *Hamner v. State*, 223 A.2d 532 (Me. 1966); *Baker v. State*, 205 Md. 42, 106 A.2d 692 (1954); *People v. Chesley*, 282 App.Div. 821, 123 N.Y.S.2d 42 (1953).

## IV.

Finally, appellant contends that his motion to dismiss the indictment on the escape charge based on count I should have

---

[8] In our opinion this result was intended by the legislature. HRS § 710-1000(4)(b) (1976 Repl.) includes within the definition of "detention facility" as used in HRS § 710-1021(l) (1976 Repl.) any place to which a person may be confined pursuant to HRS chapter 571. The appellant herein was committed to the HYCF pursuant to that chapter. *See State v. Campbell*, 314 A.2d 398, 403 (Me. 1974).

been granted because the passage of more than a year between the date of the alleged offense and the trial violated his right to a speedy trial as guaranteed by the sixth amendment to the United States Constitution made applicable to the several states through the fourteenth amendment and art. I, sec. 11 of the Hawaii State Constitution.

The test to be applied in ascertaining whether a defendant has been deprived of his right to a speedy trial was announced by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), the rationale of which we adopted in *State v. Almeida*, 54 Haw. 443, 509 P.2d 549 (1973). The remedy for prejudicial delay is the dismissal of the charge. In *Barker*, the Court formulated a balancing test to be applied on an *ad hoc* basis. These factors identified by the court were: length of the delay, reason for the delay, defendant's assertion of his right and prejudice to the defendant. *Barker, supra*, 407 U.S. at 530. However, none of these four factors are necessary or sufficient conditions to the finding of a deprivation of the right. *Id.*, at 533.

Mere length of the delay *per se* has been of no particular significance according to case law. For example, in *Almeida* we held that a seven month delay was a violation of the defendant's right to a speedy trial, yet the Supreme Court in *Barker* held that a five year delay did not violate the right. The aggregate delay complained of here is eighteen months, of which eight months constitute time spent by appellant in the HYCF, where he was to be confined during his minority.

In *Almeida*, we held that the delay was prejudicial in part because the state failed to provide any justifying reason for the delay. In contrast, the five month delay between the date of the incident and the petition for the family court's waiver of jurisdiction was attributable to the state's inability to proceed against appellant due to his absence from HYCF as a result of a month long escape subsequent to the November 16, 1974 escape. The nine month interval between the issuance of the indictment and the instant trial was attributable to the severance of the charges in the indictment into three separate trials. The appellant presently contends that he suffered adverse effects and prejudice as a result of the additional

delay, but he shall not be heard because the delays were a direct result of his own act or were the result of a benefit granted to him.

The appellant first contended denial of his right to a speedy trial as to the instant count in his motion to dismiss the entire indictment (all nine counts) filed on December 31, 1975. This was a full twelve months after the incident complained of and four and one half months after the indictment. The trial court declined to hear the merits of this motion upon objection by the prosecutor that it was filed too late. Appellant was tried by jury on the theft count and the robbery counts in January, 1976. Thereafter, the appellant asserted his right to a speedy trial again in the context of a motion to dismiss prior to the trial on this escape in the second degree count seventeen months after the complained of incident. At no time did the appellant demand a speedy trial independent of the motions to dismiss the charge.

The Supreme Court in *Barker, supra,* 407 U.S. at 531, said that the desire to obtain a speedy trial is one of the most determinative factors in ascertaining whether defendant has been deprived of that right. However, the court also said at 529, "[w]e hardly need to add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside." Because the appellant had assistance of counsel when he made the motion to sever for separate trials, he should have known that the granting of the motion would require delay in the trial process. When *Barker* is applied to the facts of the instant case, it is difficult to see the appellant's contention that he has been denied his right to speedy trial as *bona fide*. Based on these facts in the record we hold that the trial court correctly denied appellant's motion for dismissal of the charge on the basis of speedy trial denial.

Affirmed.

*Kenneth Okamoto,* Deputy Public Defender (*Marie N. Milks* and *Edmund K. U. Yee,* Deputies Public Defender, on the briefs), for Defendant-Appellant.

*Stephen D. Tom,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.

Affirmed.

*Riccio M. Tanaka*, Deputy Public Defender (*Shelton Jim On*, Deputy Public Defender, on the brief), for Plaintiff-Appellant.

*Stephen D. Tom*, Deputy Prosecuting Attorney, for Plaintiff-Appellee.