James R. **WALT**, Sr., Defendant Below, Appellant,

v.

**STATE** of Delaware, Plaintiff Below, Appellee.

No. 80, 1998.

Supreme Court of Delaware.

Submitted: Dec. 15, 1998.
Decided: March 4, 1999.

David J. Weidman, of Hudson, Jones, Jaywork, Fisher & Liguori, Dover, Delaware, for appellant.

John Williams, of the Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, HARTNETT and BERGER, Justices, constituting the Court en Banc.

HOLLAND, Justice:

In this direct appeal, the defendant-appellant, James R. Walt, Sr ., ("Walt") does not challenge the merits of his convictions for ten counts of Offensive Touching. 11 *Del.C.* § 601. Walt's only contention is that, at the time of sentencing, the Superior Court should not have considered him to be a perpetrator of domestic violence. That designation subjected Walt to an enhanced sentence under the Truth–in–Sentencing Guidelines.

The State has raised a separate issue. The Delaware Constitution imposes limitations upon this Court's appellate jurisdiction to hear direct appeals from the Superior Court in criminal proceedings. Del. Const. art. IV, § 11(1)(b). The State has moved to dismiss Walt's appeal for lack of subject matter jurisdiction.

This Court has concluded that it has jurisdiction to hear Walt's appeal pursuant to Del. Const. art. IV, § 11(1)(b). We have also concluded that the Superior Court erroneously determined Walt was a perpetrator of domestic violence, but that initial characterization at the time of Walt's sentencing constituted a harmless error. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

Walt was arrested on February 12, 1996. He was subsequently indicted on twelve counts of Unlawful Sexual Contact in the Second Degree and one count of Continuous Sexual Abuse of a Child. 11 *Del .C.* § 768 and 11 *Del.C.* § 778. The indictment alleged that Walt had sexual contact with his anticipated step-granddaughter[1] on several occasions between June 1991 and September 1995. During that time, the child was seven to eleven years old.

The Superior Court conducted a jury trial from November 4 through 7, 1997. Walt was

---

1. When the alleged offenses occurred, Walt's son had not yet married the child's mother. At that time, the child could be characterized as an anticipated step-granddaughter.

found guilty of ten counts of Offensive Touching, as a lesser-included offense of Unlawful Sexual Contact in the Second Degree. 11 *Del.C.* § 601. Walt was sentenced by the Superior Court on January 23, 1998. The Superior Court stated, in part:

> I'm placing [Walt] in the custody of the Department of Correction at Supervision Level V for thirty days, with credit for time previously served. The sentence is suspended for three months at Level IV home confinement. He will be held at Level III until space is available for home confinement.
>
> If he can't secure a suitable residence, then the Level IV sentence will be served at the Halfway House. That's as to 96–09–0039. And each of these charges are offensive touching.

The Superior Court imposed an identical sentence for three of the remaining convictions. The Superior Court then ordered thirty days at Level V, suspended for three months at Level III, for two of the other convictions. Finally, the Superior Court imposed a sentence of thirty days at Level V suspended for three months at Level II for the four remaining counts.

## This Court's Jurisdiction
### Halfway House Constitutes Imprisonment

The State has moved to dismiss Walt's appeal on the ground that the penalties imposed by the Superior Court failed to meet this Court's jurisdictional requirements. Del. Const., art. IV, § 11(1)(b). The Delaware Constitution provides for this Court to hear "appeals from Superior Court in criminal causes, upon application of the accused in all cases in which the sentence shall be death, imprisonment exceeding one month, or fine exceeding One Hundred Dollars, and in such other cases as shall be provided by law . . . ." Del. Const., art. IV, § 11(1)(b). *Shoemaker v. State,* Del.Supr., 375 A.2d 431, 436 (1977); *McCoy v. State,* Del.Supr., 217 A.2d 496, 497 (1966). This Court has held that each test for invoking this Court's jurisdiction under "[Section] 11(1)(b) of Article IV is independent of the other . . . ." *Marker v. State,* Del. Supr., 450 A.2d 397, 399 (1982).

The only test at issue in Walt's case is this Court's jurisdiction to hear direct criminal appeals when the sentence imposed provides for "imprisonment exceeding one month." Del. Const. art. IV, § 11(1)(b). Walt acknowledges that his 30–day suspended sentence of incarceration at Level V does not exceed the one month of imprisonment that is required to invoke this Court's direct appellate jurisdiction in a criminal proceeding. Del. Const. art. IV, § 11(1)(b); *Marker v. State,* 450 A.2d at 399. Walt argues, however, that any one of his three-month sentences to be served at a Level IV Halfway House does constitute imprisonment exceeding one month. Therefore, Walt contends that the State's motion to dismiss on jurisdictional grounds is without merit.

The present limitation on this Court's direct appellate jurisdiction of criminal cases of "imprisonment exceeding one month" first appeared in the 1897 Delaware Constitution. The original draft presented to the Convention provided for no appellate review unless the sentence "shall be death or imprisonment for more than six months . . . ." 2 *Debates and Proceedings of the Constitutional Convention of the State of Delaware* 960 (1958). After extensive debates, the delegates concluded that appellate review should be available following "imprisonment exceeding one month." 3 *Debates and Proceedings of the Constitutional Convention of the State of Delaware* 1783 (1958).

This Court has construed Section 11(1)(b) in the past and concluded that its provisions are unambiguous. *Marker v. State,* 450 A.2d at 399. Consequently, we held the words found in that subsection must be given the meaning ordinarily ascribed to them. *Opinion of the Justices,* Del.Supr., 290 A.2d 645 (1972). In determining the ordinary meaning of "imprisonment" as that term is used in Article IV, § 11(1)(b), this Court looked to the definition in Webster's Dictionary: "to be put in or as if in prison: confine . . . ." *Marker v. State,* 450 A.2d at 399 (*quoting* Webster's New Collegiate Dictionary (1977)). The definition of imprisonment in Black's Law Dictionary is also helpful:

> The detention of a person contrary to his will. The act of putting or confining a

person in prison. The restraint of a person's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion. It is not a necessary part of the definition that the confinement should be in a place usually appropriate to that purpose; ...

Black's Law Dictionary 757 (6th ed.1990).

In examining the history of imprisonment in Delaware, we have made two determinations about the ordinary meaning of that term that are important for purposes of Walt's appeal. First, Delaware has never limited imprisonment to what we now know as a modern secured correctional institution but has provided for imprisonment in a myriad of facilities.[2] At one time, for example, the Delaware Code defined a prison as "any workhouse, jail, prison or prison farm in this State and includes the New Castle County Workhouse, Kent County Jail and Sussex County Prison and Prison Farm." 11 *Del.C.* § 6501 (1953). Second, Delaware has always provided a means for persons who are imprisoned to work irrespective of their particular place of confinement. The 1852 Delaware Code even compelled prisoners to work for eight hours a day according to their ability and permitted the jail Commissioners to make rules for the employment of convicts. 54 *Del.Laws*, §§ 944 and 948 (1852); 11 *Del.C.* §§ 3603, 3606 and 3612 (1915); *see also* 11 *Del.C.* §§ 6742 and 6926 (1953).

"Since 1921, it has been lawful for [Delaware] prisoners to be employed outside [of] the prisons...." *Gaskill v. State*, Del.Super., 138 A.2d 500, 501 (1958). A Level IV Halfway House is currently such an arrangement. 11 *Del.C.* § 4204(c)(4). The Department of Correction's manual describes a Level IV Halfway House, as follows:

2. HALFWAY HOUSE—Offenders sentenced to a Level IV Halfway House shall be held in an accountable partial confinement residential program. These offenders shall be afforded the opportunity to prepare for the responsibility of community life *by finding employment*. They will also be able to utilize existing resources to assist themselves educationally, psychologically and socially to change those conditions which brought them into the criminal justice system. Level IV Halfway Houses will utilize a phased system of progressive movement to encourage positive conduct. This phase system is designed to monitor offender conduct and lead to full community placement.

Negative conduct shall be responded to by a limitation of program participation up to and including movement to full incarceration awaiting court action. In the event an offender's conduct is disruptive to the point where the offender is a threat to the community or to the orderly operation of the Halfway House, emergency action can be taken to detain the offender at the nearest correctional facility while court action is initiated.

Level IV offenders have been defined as probationers for due process procedural consideration. The exception is for Level IV offenders leaving or failing to return to a Halfway House without authorization. Under these circumstances, a charge of "Escape" is to be filed immediately.

The Department of Correction Sentac Manual, Level IV Partial Confinement, Standard 1.03 (1996) (emphasis supplied).

The Sentencing Accountability Commission ("SENTAC") Truth–in–Sentencing Benchbook characterizes a Level IV work release center or Halfway House as quasi-incarceration. "A defendant serving a sentence at Level IV [3] work release or Halfway House, *i.e.*, quasi-incarceration, is entitled to earn 'good time credits' pursuant to 11 *Del.C.* 4381(b) and (c)."[4] Sentence Accountability

---

2. Prior to this century, when the State Board of Corrections was established, Delaware did not have a unified state-wide prison system. Instead, separate penal institutions were operated by the governments of each county. 54 *Del. Laws*, § 933 (1852). On July 8, 1964, the Department of Correction was established as a continuation of and successor to the State Board of Corrections. 11 *Del.C.* § 6504.

3. The various types of Level IV sentencing alternatives are: Halfway Houses, residential drug treatment programs, electronic home confinement, and the Live–Out program.

4. Imprisonment at a Level IV Halfway House is distinguishable from actual incarceration at a Level V correctional facility with regard to earning good time credits as opposed to receiving

Commission, *Truth–in–Sentencing Bench-book*, Statement of Policy 29, page 57 (1998). The Benchbook's Statement of Policy also provides that "[a]ny person failing to return to a Level IV facility shall be deemed to be on escape status. A warrant will issue upon such status and the person will be returned to the sentencing court for both a violation hearing and the new charge." Sentence Accountability Commission, *Truth–in–Sentencing Benchbook*, Statement of Policy 27, page 57 (1998).

 We have concluded that a sentence to be served in a Level IV Halfway House constitutes "imprisonment" as that word is used in Art. IV, § 11(1)(b) of the Delaware Constitution. A Level IV Halfway House is not only officially denominated as quasi-incarceration, but also includes the following non-exclusive indicia of imprisonment: confinement; the ability to earn "good time credits" for release purposes; and designation as an "escapee" upon failure to return. Accordingly, because Walt was ordered to be imprisoned for three months in a Halfway House, this Court has jurisdiction to hear his direct appeal from each of those sentences by the Superior Court.

### Harmless Error
### Domestic Violence Designation

Walt claims that the statute defining domestic violence does not include a step-grandfather. Thus, Walt argues that the Superior Court erred by considering him to be a perpetrator of domestic violence and that error resulted in a presumptive SENTAC sentence of Level V incarceration. The SENTAC presumptive sentence, without a finding that Walt was a perpetrator of domestic violence, was "fine, costs, restitution only."

 This Court reviews sentencing of a criminal defendant by the Superior Court under an abuse of discretion standard. *Mayes v. State*, Del.Supr., 604 A.2d 839, 842–43 (1992). "Appellate review of a sentence generally ends upon determination that the

sentence is within the statutory limits prescribed by the legislature." *Mayes v. State*, 604 A.2d at 842 (*quoting Ward v. State*, Del.Supr., 567 A.2d 1296, 1297 (1989)). A sentencing court abuses its discretion if the sentence is based on inaccurate or unreliable information. *Mayes v. State*, 604 A.2d at 843. "Thus, in reviewing a sentence within statutory limits, this Court will not find error of law or abuse of discretion unless it is clear from the record below that a sentence has been imposed on the basis of demonstrably false information or information lacking a minimal indicium of reliability." *Id.*

Domestic violence is defined by statute as abuse perpetrated by one family member against another family member as the word family is defined in 10 *Del.C.* § 901(9). 10 *Del.C.* § 1041(2)(a). The statutory definition of family is a person who is related to the other person by any of the following degrees of relationship, both parties being residents of Delaware: mother, father, mother-in-law, father-in-law, brother, sister, brother-in-law, sister-in-law, son, daughter, son-in-law, daughter-in-law, grandfather, grandmother, grandson, granddaughter, stepmother and stepfather. 10 *Del.C.* § 901(9). The comprehensive definition of family limits the operation of the statute to the specifically identified relationships only. This Court has cited with approval the principle of statutory construction *expressio unius est exclusio alterius*, meaning the expression of one thing is the exclusion of another. *Hickman v. Workman*, Del.Supr., 450 A.2d 388, 391 (1982).

 We have concluded that the Superior Court erred by determining that a step-grandfather was within the statutory definition of persons who could perpetrate domestic violence and, *a fortiori*, an anticipated step-grandfather is not within the statutory definition. In denying Walt's motion for reconsideration of the sentence imposed, however, the Superior Court acknowledged the probable validity of Walt's argument that a step-grandparent was not within the statuto-

---

credit for time served. *Johnson v. State*, Del. Supr., Nos. 41, 1996, 74, 1996, 1997 WL 70827, Berger, J. (Feb. 12, 1997) (ORDER) and *Shepherd v. State*, Del.Supr., No. 161, 1996, 1996 WL

585904, Veasey, C.J. (Oct. 1, 1996) (ORDER). *Compare* 11 *Del.C.* § 4381(b) and (c) *with* 11 *Del.C.* § 3901(c).

ry definition of family. The Superior Court then explained why it still would not reduce Walt's sentence, even if it had wrongfully designated Walt as a perpetrator of domestic violence:

> I have your request for a stay. Whether or not the statute at 10 *Del.C.* § 901 applies, I still have discretion to impose a sentence outside of the guidelines which I believe is warranted and which I did in this case. Therefore, the motion for a stay is *denied.*

The record reflects the fact that Walt was initially considered to be a perpetrator of domestic violence was only one of six factors the Superior Court specifically took into account in arriving at its sentencing plan for Walt.

The State argues that, even if the Superior Court erred in determining that a step-grandfather is included in the definition of "family" members contained in 10 *Del.C.* § 901(9), any error is harmless beyond a reasonable doubt because the presumptive sentence of up to one month at Level V was suspended for all of Walt's ten convictions; the Superior Court identified five other reasons for sentencing Walt outside the guidelines; and Walt's sentence was within the statutory limits of 11 *Del.C.* § 4206(c). We agree. Nevertheless, although the Superior Court's misconstruction of the statute was harmless beyond a reasonable doubt with regard to Walt's sentences, any designation of Walt as a perpetrator of domestic violence should be removed from the Superior Court's records.

### Conclusion

The judgments of the Superior Court are AFFIRMED.